EDITH BROWN CLEMENT, Circuit Judge,
dissenting:
While I concur in the reversal of the judgments of acquittal, I respectfully dissent from the majority’s holding that the district court did not abuse its discretion when it granted the defendants a new trial. Setting aside the jury’s verdict and granting a new trial in the interest of justice is appropriate “where the evidence brought forth at trial may tangentially support a guilty verdict, but in actuality, preponderates sufficiently heavily against the verdict such that a miscarriage of justice may have occurred.” United States v. Tarango, 396 F.3d 666, 672 (5th Cir.2005) (internal quotation omitted). There is no question that the evidence here, which included Collins’s own financial records, testimony from Lori Lero, and testimony from multiple Texas Department of Criminal Justice employees, fully supported a guilty verdict for both defendants.
The majority relies on three factors to justify its holding. Even in combination, these factors are insufficient to justify the district court’s decision to grant a new trial. First, the majority states that the district “court found that the testimony of the government’s key witness, who provided the only direct evidence of wrongdoing, was unfounded and perjured.” Maj. Op. at 58-59. This factor merely restates the district court’s disagreement with the jury’s verdict and credibility determinations. The evidence before the jury was both substantial and compelling, even apart from Patrick Graham’s disputed testimony.
Barry claimed that he did not know that Collins was still employed by TDCJ when he began to make payments to Collins in late 1995, but TDCJ employees testified that Barry visited the TDCJ offices in December 1995, when Collins helped him obtain an identification card by introducing him as an entertainer. Graham’s daughter Lori Lero, an attorney, testified that she set up the corporation Certified Technology Consultants (“CTC”) with Collins’s knowledge and that she was told to do so in order to facilitate payments to Collins from Barry’s company, VitaPro. CTC’s financial records revealed thousands of dollars in wire transfers from VitaPro to CTC, and Collins’s personal financial records showed deposits that matched the amounts VitaPro transferred to CTC. In short, there was substantial evidence of wrongdoing by Collins and Barry that did not depend directly on Graham’s testimony.
Perhaps more importantly, Collins and Barry failed to present credible evidence to counter the government’s case. For example, to explain thousands of dollars in cash deposited into Collins’s bank account, Collins testified that he was “a voracious change saver” and that the money came from change he had collected over the years.
Second, the evidence that the district court called irrelevant and confusing was *60 in fact both relevant and helpful and did not justify a new trial. Id. The allegedly-confusing cash transactions corroborated Graham’s testimony and provided evidence of a corrupt agreement between Collins and Barry. The detailed financial analysis of CTC’s and Collins’s bank accounts, another allegedly confusing matter, was necessary to properly trace the funds transferred to CTC from VitaPro. The allegedly confusing and irrelevant evidence regarding misuse of a social security number indicated that Barry knew that Collins was still employed by'TDCJ during December 1995, contrary to Barry’s testimony. This was evidence of Barry’s guilty knowledge that he was paying Collins while Collins was still employed at TDCJ. The evidence of Collins’s financial transactions and Barry’s misuse of the social security number was neither irrelevant nor unduly confusing and did not justify granting a new trial.
Third, the district court found that “no substantially verbatim transcript of the trial exists to support proper appellate review.” Id. This finding is at odds with this court’s precedent regarding incomplete trial transcripts, which looks more skeptically on missing transcripts than on otherwise complete transcripts which contain errors. Compare United States v. Neal, 27 F.3d 1035, 1044 (5th Cir.1994) (holding that a more than 150-volume trial transcript containing over 300 errors was not “unreasonably incomplete or substantially inaccurate” when these errors “were primarily of a typographical nature”), with United States v. Selva, 559 F.2d 1303, 1306 (5th Cir.1977) (remanding for a new trial when all of the closing arguments were missing from the transcript).
The present case is much more like Neal than Selva. Collins and Barry’s trial was transcribed in full, and the vast majority of the errors verified in the corrected transcript were typographical in nature. In addition, 71.55% of the transcript was compared to audiotape backup and corrected to make those portions verbatim. I would hold that the transcript is sufficiently complete to permit appellate review.
As the majority noted, the district court must not “set aside a jury’s verdict because it runs counter to [the] result the district court believed was more appropriate.” Maj. Op. at 58 (quoting Tarango, 396 F.3d at 672). That is exactly what happened here. None of the district court’s stated reasons are individually sufficient to justify a new trial, and they do not gain additional merit via aggregation. For these reasons I would reverse the district court and remand with instructions to reinstate the jury’s verdict.